UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 06 Civ. 39 (RJS)

ECHO WESTLEY DIXON,

Petitioner,

VERSUS

MICHAEL MCGINNIS, SUPERINTENDENT,

Respondent.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-19-12

MEMORANDUM AND ORDER
ADOPTING REPORT AND RECOMMENDATION
December 19, 2012

RICHARD J. SULLIVAN, District Judge:

Echo Westley Dixon ("Petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), challenging his conviction in New York State Supreme Court, New York County, for robbery in the second degree. Following his conviction, Petitioner was sentenced to ten years imprisonment, to be served consecutively with his previously undischarged sentences arising from two unrelated convictions for arson and narcotics.

Before the Court are the Report and Recommendation (the "Report") of the Honorable Frank Maas, Magistrate Judge, recommending that the Petition be denied, and Petitioner's Objections to the Report. For the following reasons, the Court adopts the Report in its entirety.

I. BACKGROUND

A. Facts[1]

On July 7, 2000, Petitioner and Christopher Seldon robbed Joseph Martinez in a stairwell of the subway station at 34th Street and Eighth Avenue. (Tr. at 12-13, 14, 19-22.) As Martinez was exiting the station, Petitioner and Seldon attacked him from the rear. (Id. at 19-20, 35-36.) While Seldon

[1] The facts are drawn from the testimony received at trial ("Tr.") and exhibits attached to Respondent's Answer ("Ex."). In reviewing the Petition, the Court must view any disputed facts in the light most favorable to the prosecution and draw all inferences in its favor. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). In addition to reviewing the Report and the Petition, the Court has also considered Respondent's Memorandum of Law in Opposition ("Resp't Opp'n"), Petitioner's Reply ("Pet'r Reply"), and Petitioner's Objections ("Pet'r Obj.").

pushed Martinez's shoulder against a wall, Petitioner put his hand in Martinez's pocket and removed approximately $120 in cash, Martinez's bank identification card, and his paycheck. (*Id.* at 20-21.) Petitioner and Seldon then fled into the subway. (*Id.* at 22.) Martinez chased and caught Seldon at a turnstile. (*Id.* at 24.) He held Seldon there until police arrived; Petitioner, however, escaped. (*Id.* at 24, 74.)

Later that day, Martinez reviewed a lineup, at which time he identified Petitioner as one of the robbers. (*Id.* at 26.) Petitioner was arrested following the identification. (*Id.* at 90.) Police failed to find any of Martinez's property on Petitioner. (*Id.*)

Petitioner was tried twice. His first trial, in March 2001, ended in a mistrial when the jury could not reach a verdict. (Ex. C at 3.) His second trial commenced on February 20, 2003 and concluded on February 25, 2003, when the jury found him guilty of robbery in the second degree. (Ex. D.) Thereafter, Petitioner was sentenced to a prison term of ten years, to be served consecutively to his sentences arising out of two unrelated convictions totaling twelve years. (Ex. C at 14.) He is currently incarcerated in the New York State prison system.

On June 20, 2003, Petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. (Ex. A ("First 440.10 Motion").) He claimed, *inter alia*, that the trial court judge had improperly assisted the prosecutor and interrupted defense counsel during the course of the trial. (*Id.*) On March 4, 2004, the motion was denied. (Ex. B ("March 2004 Order").) The court held that Petitioner's judicial misconduct claim was record-based and barred by CPL § 440.10(2)(b) because it must first be raised on direct appeal. (*Id.*)

In April 2004, Petitioner, represented by counsel, appealed his conviction to the New York Supreme Court, Appellate Division, First Department. (Ex. C ("Direct Appeal").) Petitioner claimed that he was denied a fair trial by virtue of the trial court's decision to allow the prosecution to question Petitioner about his past crimes, the court's comment questioning the validity of the defense's theory of the case, and the prosecutor's summation vouching for Martinez's honesty. (*Id.* at 15-24.) Petitioner also claimed that his sentence was unduly harsh and grossly disproportionate to the sentence he previously had been offered as part of a plea bargain. (*Id.* at 25-27.) On June 2, 2005, the Appellate Division unanimously affirmed Petitioner's conviction. *See People v. Dixon*, 795 N.Y.S.2d 586, 587 (App. Div. 2005). Thereafter, the Court of Appeals denied Petitioner's request for leave to appeal. *People v. Dixon*, 5 N.Y.3d 827 (2005).

On August 15, 2005, Petitioner filed a second *pro se* § 440.10 motion to vacate his conviction on the grounds that, *inter alia*, the trial judge violated his right to a fair trial by allowing the prosecutor to impeach him with his prior criminal convictions, requiring him to wear a sanitation worker's uniform during his trial, and not permitting him to call Seldon as a defense witness. (Ex. I ("Second 440.10 Motion").) The court denied the motion on procedural grounds because the claims were not raised in Petitioner's direct appeal nor in his First 440.10 Motion. (Ex. J ("October 2005 Order").) Petitioner sought leave to appeal the decision, which was denied. (Ex. M ("Certificate Denying Leave to Appeal").)

2

B. Procedural History

Petitioner filed his Petition on January 4, 2006.[2] In it, Petitioner claims that (1) the trial judge violated his due process rights by improperly examining witnesses, questioning the defense theory of the case in front of the jury, allowing the prosecutor to vouch for the complainant's honesty and mischaracterize the defense theory of the case, allowing cross examination of his prior convictions, and requiring him to stand trial in prison garb; (2) the trial court violated his Sixth Amendment rights by refusing to compel the testimony of a defense witness; and (3) his sentence was unduly harsh.

The Petition was originally assigned to the Honorable Kenneth M. Karas, District Judge, who dismissed it without prejudice on April 11, 2006 because Petitioner had failed to exhaust his appellate remedies. (Doc. No. 3.) After Petitioner reported that he had done so, Judge Karas directed that Respondent submit opposition papers by May 15, 2007. Due to a clerical error, the letter containing the endorsement was not docketed until July 10, 2009. (*See* Doc. No. 13.) In the interim, the case was reassigned to my docket.

On March 19, 2008, Petitioner filed a motion for default judgment because Respondent had not answered the Petition. The Court denied the motion on January 30, 2009 and directed Respondent to respond to the Petition by March 30, 2009. The Petition was fully submitted on May 29, 2009. By order dated June 2, 2009, the Court referred the Petition to Judge Maas, who issued his Report on June 9, 2010. Petitioner filed his Objections to the Report on June 17, 2010.

On March 23, 2012, the Court received a letter from Petitioner, informing the Court that he had "appealed [the Court's] failure to grant habeas relief in this case to the Supreme Court." Nevertheless, although Petitioner's letter informed the Court that he filed an appeal with the Supreme Court, no notice of appeal was filed with this Court, and Petitioner's appeal does not appear on the United States Supreme Court's docket.

II. Discussion

A. Jurisdiction

As a general rule, the district court is divested of jurisdiction when a notice of appeal has been filed. *See United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). However, where "a notice of appeal has been filed from an order that is non-appealable, jurisdiction does not rest with the Court of Appeals but remains with the district court." *Hoffenberg v. United States*, No. 00 Civ. 1686 (RWS), 2004 WL 2338144, at *2 (S.D.N.Y. Oct. 18, 2004) (listing Second Circuit cases in which notices of appeals taken from non-final orders were determined to be "premature" and did not divest district courts of jurisdiction); *see also Mitrione ex rel. Melissa v. Monroe*, No. 02 Civ. 526 (LEK) (RFT), 2009 WL 2485825, at *2-3 (N.D.N.Y. Aug. 11, 2009) ("[The divestiture of jurisdiction rule] is a judicially crafted rule rooted in the interest of judicial economy. . . . Here, Defendants sought to appeal a non-final order without first obtaining a certificate of appealability from this [c]ourt. Therefore their appeal was plainly unauthorized and did not divest this [c]ourt of jurisdiction."). In this case, Petitioner has not appealed any order – final or non-final to either the Second Circuit or the United States Supreme Court. Nevertheless, even if Petitioner's letter could be construed to constitute a notice of

---

[2] The Petition is one of several actions that Petitioner has filed with courts in this district, including at least two separate habeas claims and thirteen § 1983 actions. *See infra* note 4.

appeal, jurisdiction would clearly remain with this Court, because Petitioner would be appealing a non-final order without first obtaining a certificate of appealability from the Court. *See Hoffenberg*, 2004 WL 2338144, at *2-3.

Furthermore, the Court finds that any further delays in resolving this Petition would be inefficient and, therefore, finds it appropriate to retain jurisdiction. *See Jackson v. Poole*, No. 06 Civ. 188 (PKC) (DF), 2011 WL 4901314, at *4 (S.D.N.Y. July 19, 2011) (retaining jurisdiction despite petitioner's filing of an interlocutory appeal to the Second Circuit, because "there did not appear to be any basis for the Second Circuit to hear [p]etitioner's appeal at this time, and, especially given the age of this habeas proceeding, no goals of efficiency would be served by any further delays"). Therefore, despite Petitioner's purported appeal to the United States Supreme Court, this Court retains jurisdiction over the instant habeas proceeding.

## B. Judge Maas's Report and Recommendation

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). To the extent that a party makes specific objections to a magistrate judge's findings, the court must undertake a *de novo* review of the petitioner's objections. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*,

121 F.3d 34, 38 (2d Cir. 1997). However, where the objections are "conclusory or general," or where the petitioner "simply reiterates his original arguments," the report should be reviewed only for clear error. *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002); *accord Cartagena v. Connelly*, No. 06 Civ. 2047 (LTS) (GWG), 2008 WL 2169659, at *1 (S.D.N.Y. May 23, 2008).

Here, Judge Maas found that Petitioner's claim that the trial judge unreasonably interfered in questioning the witnesses was unexhausted because he failed to appeal the denial of his First 440.10 Motion. *See Dixon v. McGinnis*, No. 06 Civ. 39 (RJS) (FM), 2010 WL 3260459, at *7 (S.D.N.Y. June 9, 2010). He also found that this claim and Petitioner's claim that the trial court violated his due process rights when it prevented him from calling a witness were unreviewable for habeas relief because the denial of those claims in state court were based on an "independent and adequate" state ground. *See id.* at *8. Nevertheless, Judge Maas also reviewed the merits of both claims and determined that they did not warrant habeas relief. *See id.* Finding the rest of Petitioner's claims meritless, Judge Maas recommended that the Petition be denied. *See id.* at *17.

## C. Petitioner's Objections

Petitioner submitted his Objections on or around June 15, 2010, as well as an attached brief for an unrelated appeal to the Second Circuit. Petitioner objects primarily to Judge Maas's findings with respect to the exhaustion requirement. First, Petitioner argues that he had cause for failing to exhaust because of the "suppression of the $125 by State actors,"[3] which prevented

---

[3] By use of the word "suppression," Petitioner appears to argue that prosecutors coerced Martinez into testifying to a theft of $125 at Petitioner's first

Petitioner from complying with state procedural rules. (Pet'r Obj. 2.) Second, he argues that his claims *were* exhausted because of "the manner in which State agents procured his unconstitutional conviction[,]" as evidenced by the record and Supreme Court precedent. (*Id.*) Finally, he argues that the exhaustion requirement is unconstitutional as applied in this case because it amounts to "discriminatory animus towards illiterate and indigent prisoners." (*Id.* at 12.) Petitioner also submitted a number of letters regarding the Petition; however, these letters merely restate his arguments from the Petition or make *ad hominem* attacks against Judge Maas.

### 1. Cause and Prejudice

Before seeking federal habeas relief, a petitioner must first exhaust his federal constitutional claims in state courts. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003). In order to exhaust his claim, a petitioner must present his claim "to the highest court in the . . . state." *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001). In New York, a petitioner typically files a § 440.10 motion with the trial court where the judgment of conviction was entered after he has exhausted his direct appeal. *See* CPL § 440.10(1). Upon denial of the motion, a petitioner may seek leave to appeal the decision to the Appellate Division. *See id.* § 440.15(1). If leave is denied, then petitioner has exhausted his claims because he may not thereafter seek leave to appeal to the New York State Court of Appeals. *See Deberry v. Spitzer*, No. 05 Civ. 5286 (NG)

(RML), 2011 WL 1239999, at *6 (E.D.N.Y. Feb. 17, 2011).

Where a petitioner has failed to exhaust his claims, and such claims are procedurally barred in state court, those claims are generally unreviewable for federal habeas relief unless the petitioner can show cause and prejudice excusing his failure to exhaust or actual innocence. *See Lebron v. Sanders*, No. 02 Civ. 6327 (RPP), 2008 WL 793590, at *7 (S.D.N.Y. Mar. 25, 2008); *see also Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (citing *Dretke v. Haley*, 541 U.S. 386, 393 (2004)). To show cause, "a petitioner must demonstrate that 'some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule.'" *Wynder v. Smith*, No. 09 Civ. 4541 (LAP) (JLC), 2011 WL 70556, at *7 (S.D.N.Y. Jan. 10, 2011) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate prejudice, a petitioner must show the constitutional errors raised in the petition "actually and substantially disadvantaged petitioner's defense so that he was denied 'fundamental fairness.'" *Roa v. Portuondo*, 548 F. Supp. 2d 56, 59 (S.D.N.Y. 2008) (quoting *Murray*, 477 U.S. at 494). Also, a federal court will not review a claim for habeas relief where the state court denied a petitioner's claim on an "independent and adequate state ground." *See Lebron*, 2008 WL 793590, at *6. A state procedural bar is generally an independent and adequate state ground if it is "'firmly established and regularly followed.'" *See Cotto*, 331 F.3d at 239-40 (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

As noted above, Petitioner first argues that he had cause in failing to exhaust his claim because the government "suppress[ed]" "$125." (Pet'r Obj. 2.) According to Petitioner, because of the alleged "suppression," he "frantically" filed

---

trial, which Petitioner suggests was "perjured testimony," and then "suppressed" that testimony by having Martinez testify to a different amount at Petitioner's second trial. (Pet'r Obj. at 7-8.) Specifically, at the second trial, Martinez testified that Petitioner stole "120 some odd dollars in cash." (Tr. at 21.)

actions in federal court pursuant to 42 U.S.C. § 1983.[4] (*Id.* at 8.) Additionally, Petitioner alleges that both his trial and appellate counsel knew of the coercion but did not raise the issue because they "actively took part" in a conspiracy, along with law enforcement and the courts, to deprive Petitioner of his constitutional rights. (*See id.* at 9-10.) Petitioner argues that, accordingly, he was unable to raise his claims in his post-conviction collateral attacks. (*See id.* at 15.)

Although interference by government officials can meet the standard for "cause" set forth above, *see Murray*, 477 U.S. at 488, Petitioner has failed to explain how the alleged "suppression" of the evidence in this case prevented him from filing his direct appeal or § 440.10 motion. He circularly argues that the "suppression" prevented him from filing § 1983 actions *in forma pauperis* because of the multiple filings spurred by his "frantic[]" need to prove the "suppression."[5] The record is clear that Petitioner failed to appeal the denial of his First 440.10 Motion and failed to raise the claims on direct appeal. As such, he was not prevented from making his claims; he simply failed to follow state procedure. For this reason, Petitioner has failed to establish cause for failing to exhaust.

Moreover, even if it were possible for Petitioner to demonstrate cause, he cannot demonstrate actual prejudice. Throughout the trial, the only mention of cash was the victim's direct testimony that he "had 120 some odd dollars in cash" in his pocket. (Tr. at 21.) Testimony based on an approximation, like "120 some odd dollars," is an insignificant departure from the exact amount, "$125," that Petitioner alleges was "suppressed." Finally, the "suppression" of "$125" has no bearing on any of Petitioner's claims, most of which turn on the allegedly improper conduct of the trial judge. Accordingly, Petitioner's objection in this regard is meritless.

## 2. Unconstitutionality

Petitioner next argues that his claims were in fact exhausted because of his unconstitutional conviction. (*See* Pet'r Obj. at 9-10.) There is no support in the law that a petitioner seeking habeas relief automatically meets the claim exhaustion requirement simply because his conviction was allegedly unconstitutional. If that were enough, then a petitioner would never have to exhaust his claims because the very nature of a habeas petition is to seek federal relief from an allegedly unconstitutional state conviction. Moreover, Judge Maas, after finding that some of Petitioner's claims were procedurally defaulted, found, in the alternative, that the Petition should be denied on the merits. Because Petitioner did not object to these alternative grounds, and because the Court finds the Report to be free from clear error, the Court concludes that Petitioner's conviction was not unconstitutional. Accordingly, the Court rejects Petitioner's objection on this ground as meritless.

---

[4] A review of Petitioner's filings in the Southern District reveals that nine of Petitioner's § 1983 actions were filed prior to his filing of the instant Petition, and most appear to allege violation of Petitioner's rights while he was in prison. Only one appears to involve the officers who investigated the underlying crime in the instant Petition. *See Dixon v. Barretto*, No. 03 Civ. 8103 (MBM). That action was dismissed pursuant to 28 U.S.C. § 1915(e)(2), along with Petitioner's other actions.

[5] Pursuant to 28 U.S.C. § 1915(g), Petitioner was prohibited from bringing any further actions *in forma pauperis* because he had brought three or more such actions that had been dismissed as frivolous or malicious, or for failure to state a claim. (*See id.*); 28 U.S.C. § 1915(g). However, Petitioner was not prohibited from filing actions *in forma pauperis* until August 20, 2008. *See Dixon v. Grant*, No. 08 Civ. 7364 (LAP) (Doc. No. 3). Accordingly, that bar is immaterial to Petitioner's exhaustion argument.

Petitioner finally argues that the exhaustion requirement is unconstitutional as applied against him because it amounts to "discriminatory animus towards illiterate and indigent prisoners." (*Id.* at 12.) The thrust of Petitioner's argument is that, because he is illiterate, the exhaustion requirement amounts to use of "excessive force . . . psychologically" by "government agents with superior intellect" to prevent Petitioner from raising viable claims. (*Id.* at 43-46.) First, there is no support in the law for Petitioner's theory. Second, while Petitioner filed his First 440.10 Motion *pro se* prior to his direct appeal, he was represented by counsel on his direct appeal. That direct appeal included many of the claims that he now asserts in the Petition, which Judge Maas reviewed on the merits. Thus, Petitioner had the opportunity to exhaust many of his claims while represented by counsel. Finally, the Court notes that petitioners seeking federal habeas relief routinely manage to exhaust properly their claims in state courts while appearing *pro se*. *See, e.g.*, *Smith v. Herbert*, 275 F. Supp. 2d 361, 367 (E.D.N.Y. 2003). Accordingly, the Court rejects Petitioner's objection on this ground.

### 3. Remaining Claims

Like Judge Maas, the Court also finds that Petitioner failed to exhaust his claim that he was denied due process when the trial judge allegedly interfered in the questioning of witnesses. Petitioner raised this claim in his First 440.10 Motion on June 20, 2003. (*See* First 440.10 Motion.) The motion was denied because the exchanges at issue appeared on the trial record and could be directly appealed. (*See* March 2004 Order.) There is no record that Petitioner appealed this decision, nor did he raise that issue on his subsequent direct appeal. Accordingly, the highest court that could

review his claim did not have an opportunity to do so, and his claim is unexhausted.

Furthermore, the Court finds that the impermissible questioning claim, as well as Petitioner's claim that he was denied his Sixth Amendment right of confrontation when the trial court refused to compel a defense witness's testimony, are unreviewable because the state court denied these claims on an independent and adequate state ground. Courts in this circuit have consistently held that denial of a § 440.10 motion because of either a failure to directly appeal the claim or a failure to raise the issue in a prior § 440.10 motion is a denial on independent and adequate state grounds. *See Figueroa v. Heath*, No. 10 Civ. 0121 (JFB), 2011 WL 1838781, at *6 (E.D.N.Y. May 13, 2011) (direct appeal); *Rosas v. Artus*, No. 05 Civ. 8440 (KMK), 2007 WL 1573919, *2 n.4 (S.D.N.Y. May 24, 2007) (prior § 440.10 motion). Here, Petitioner raised these claims in his Second 440.10 Motion. (*See* Second 440.10 Motion.) That motion was denied because Petitioner failed to raise the issues either on direct appeal or in his First 440.10 Motion. (*See* October 2005 Order.) Thereafter, Petitioner sought leave to appeal the denial, which was itself denied on July 20, 2006. (*See* Certificate Denying Leave to Appeal.) Accordingly, the Court finds that Petitioner's claims are procedurally defaulted. Because, as noted above, Petitioner has made no plausible allegation of cause to explain his failure to raise these claims, the Court finds these claims to be unreviewable for federal habeas relief.

With respect to the remainder of the Report, to which Petitioner did not object, the Court finds, after a careful review of the record, that Judge Maas's thoughtful and reasoned Report is not clearly erroneous and adopts it.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts the Report in its entirety and denies the Petition. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated:       December 19, 2012
             New York, New York

                    * * *

Petitioner Echo Westley Dixon appears *pro se.*

Respondent Michael McGinnis is represented by Paul B. Lyons, Esq., New York State Office of the Attorney General, 120 Broadway, New York, New York 10271.

8

Copies of this Order have been mailed to:

Echo Westley Dixon
# 00A6365
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

Paul Bernard Lyons
New York State Office of the Attorney
General
120 Broadway
New York, NY 10271